MARY L. COCCO *v.* THOMAS B. COCCO

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued January 3—decision released February 19, 1974

*Michael R. Friedman,* with whom, on the brief, were *Abraham D. Slavitt* and *Robert A. Slavitt,* for the appellant (plaintiff).

*Angelo P. Costa,* for the appellee (defendant).

MacDonald, J.  This appeal arises from a court order entered on October 9, 1970, pertaining to a judgment of divorce obtained by the plaintiff in 1964.  It involves:  (1) the denial of the plaintiff's motion to hold the defendant in contempt[1] and, incidental thereto, the subsequent denial of her motion to reargue the motion and (2) the granting of the defendant's motion to modify the custody, support and alimony provisions of the judgment.

[1] Although the record indicates that the court (*Testo, J.*) on May 25, 1972, adjudged the defendant to be in contempt, the date is obviously an error and should appear as May 25, 1970.  Also, it clearly appears in the record that this appeal concerns the denial of the plaintiff's contempt motion by the court (*Levine, J.*) on October 9, 1970.

The finding, which requires no correction, discloses the following facts. On January 15, 1964, the plaintiff obtained a decree of divorce which also awarded her custody of two minor children and provided that the defendant pay to the plaintiff "for her support and maintenance and for the support, maintenance and education" of the two minor children certain sums of money which were to be based upon the defendant's income from his medical practice. To compute such payments, the judgment provided that the defendant annually, on January 5, deliver to the plaintiff "a statement of his net earnings for the calendar year preceding such date, showing the sources and amounts of gross earnings together with a statement of business expenses deducted from such earnings or paid during such period." The judgment further directed that "[t]he annual statement of earnings shall be used in determining the amount to be paid monthly by the defendant to the plaintiff during the calendar year commencing immediately after the calendar year covered by such statement" and that "[t]he gross earnings of the defendant during each annual period ending December 31st shall measure the monthly payments to be made to the plaintiff during the next annual period beginning January 1st." The judgment thereafter set forth a table showing what portion of the defendant's annual earnings should be paid to the plaintiff "as support and alimony."

The exact wording of the provisions of the judgment above quoted was taken from an agreement executed by the parties on January 14, 1964. Similarly, the words "support and maintenance" for the wife, as used in the judgment instead of the word "alimony," were copied from the agreement.

After a hearing on September 10, 1970, at which financial affidavits of both the plaintiff and the defendant were filed in accordance with the provisions of Practice Book § 380, the court on October 9, 1970, (1) denied the plaintiff's motion to hold the defendant in contempt by overruling her claim that the judgment should be interpreted as requiring that support payments be based upon gross rather than net earnings of the defendant and (2) modified the custody, support and alimony provisions of the judgment by transferring custody of the two children to the defendant and reducing the "alimony" payments to the plaintiff by two-thirds. A motion by the plaintiff to reargue her motion for contempt was subsequently denied by the court.

It was uncontroverted that for six years prior to the hearing the defendant had made all payments to the plaintiff on the basis of his gross earnings less expenses of his medical practice and the plaintiff's claim for contempt was based upon this method of computation. It was the plaintiff's contention then, as it is now on appeal, that it was the intention of the parties in their agreement and the purport of the judgment as rendered that the payments were to be computed upon the defendant's gross earnings without the deduction of his professional expenses. With this contention we cannot agree.

Since the parties had executed a separation agreement from which, by further agreement, the language of the judgment with respect to the payments under consideration was copied verbatim, the meaning of that agreement should be taken into consideration in construing the judgment. "The expressed intention of the parties to a contract is to be deter-

mined from the language used, interpreted in the light of the situation of the parties and the circumstances connected with the transaction." *Buckley* v. *Buckley,* 144 Conn. 403, 409, 133 A.2d 604. "The question is not what intention existed in the minds of the parties but what intention is expressed in the language used." *Ives* v. *Willimantic,* 121 Conn. 408, 411, 185 A. 427. "The words they employed must be accorded their common meaning and usage where they can be sensibly applied to the subject matter of the contract." *Beach* v. *Beach,* 141 Conn. 583, 588–89, 107 A.2d 629. "To this end the contract is to be taken as a whole, and all its relevant provisions considered in connection with each other and in such light as is afforded by the situation of the parties and the circumstances existing at the time." *Baydrop* v. *Second National Bank,* 120 Conn. 322, 327, 180 A. 469. It follows, of course, that a judgment copied from or based upon the language of an agreement must be read as a whole and that "[t]he interpretation of a judgment may involve the circumstances surrounding the making of the judgment." *Garguilo* v. *Moore,* 156 Conn. 359, 365, 242 A.2d 716.

Here, the agreement entered into by the parties and, pursuant thereto, the judgment rendered provide that the defendant annually shall furnish to the plaintiff "a statement of his net earnings for the calendar year preceding such date, showing the sources and amounts of gross earnings together with a statement of business expenses deducted from such earnings or paid during such period." From the directives following this provision in both the agreement and the judgment that "[t]his annual statement of earnings shall be used in determining the amount to be paid monthly by the defendant to

the plaintiff" and that "[t]he plaintiff shall have the right . . . to examine . . . the books and records of the defendant to ascertain the accuracy of such statement," it seems obvious that it was the intention of the parties that the defendant was to base his payments on gross earnings less the expenses of the operation of his medical practice. This specific method of computing the basis for payments was employed instead of simply providing, as is frequently done, that the phrase "net earnings" as used in the agreement would be the same as shown on the defendant's income tax returns. Since "net earnings" was not otherwise defined in the agreement or judgment, it must be given its ordinary meaning as used in general accounting practice, namely, gross earnings less the legitimate expenses of realizing such earnings. The standard definition of the phrase "net earnings" is "excess of earnings over expenses, sometimes including interest charges, during a given period." Webster, New International Dictionary (2d Ed.). That this was the meaning intended by the parties is made even more apparent by the fact that from the date of the judgment, in 1964, until the filing of the contempt motion under discussion, a period of over six years, payments based upon gross earnings less expenses of medical practice were accepted by the plaintiff without at least any formally recorded objection or complaint on her part, for the record fails to disclose any.

As to the second issue raised concerning the court's modification of the custody, support and alimony orders of the judgment, it clearly appears that this matter was not properly before the court in that it had been agreed by counsel and, indeed, recognized by the court, that the motion for modifi-

cation was to be disposed of by another judge, who already had it under consideration, after the submission to him of a report by the family relations office. Under the circumstances, the court should not have proceeded with the motion. Therefore, the court erred in modifying the judgment; the case must be remanded for further proceedings, as to the pending motion for modification, in accordance with this opinion, by referring it back to the judge who ordered the report and who by agreement of the parties "retained control of that matter."

There is error in part and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.