CHANEY, N.K.A. COOK, APPELLANT, *v.*
CHANEY, APPELLEE.*

(No. 84AP-1136 — Decided
June 6, 1985.)

*Steven E. Hillman,* for appellant.
*Winkfield & Brooks Co., L.P.A.,* and
*Lawrence E. Winkfield,* for appellee.

McCORMAC, J. The parties to this
appeal dissolved their marriage on De-
cember 3, 1980. In 1983, they disagreed
as to the amount that child support
should be increased and a motion for
contempt was filed. Their separation
agreement stated that the husband,
Michael A. Chaney (appellee), would
provide child support for their two
minor children at the rate of $50 per
week per child with increases as follows:

"Beginning April 1, 1982 and on
each April 1st thereafter, until Husband
no longer has an obligation to make child
support, Husband shall pay to Wife for
increased child support an amount equal
to the percentage increase in Husband's
net income as shown by the previous
year's income tax return. * * *"

Noting that the term net income was
not defined in the agreement, the lower
court adopted the decision and report of
the referee which determined that net
income was synonymous with adjusted
gross income as used on tax form 1040.
In so holding, a $25,000 stock loss was
deducted in 1982 from appellee's in-
come, thereby substantially reducing the
percentage increase in child support.
The wife, Mary K. Chaney, n.k.a. Cook
(appellant), has appealed this judgment,
asserting the following assignments of
error:

"I. The court erred in finding that
'net income,' as referred to in the par-
ties' separation agreement regarding
child support calculations, meant 'ad-
justed gross income.'

"II. The court below erred in
allowing the petitioner/husband-appellee
to subtract a '1244 stock loss' from his
income to determine 'net income' for
child support purposes as provided in
the separation agreement.

"III. The court below erred in find-
ing that the '1244 stock loss' of the ap-
pellee was a proper deduction in 1982
and the court should have found that
this specific deduction was one which
should have been taken in 1981.

* Reporter's Note: A motion to certify
the record to the Supreme Court of Ohio was
dismissed for want of prosecution on October
30, 1985 (case No. 85-1557).

"IV. The court erred in finding no arrearages were owed by petitioner/husband to petitioner/wife as of April 1, 1984.

"V. The court erred in not awarding petitioner/wife attorney fees and costs incurred."

Central to this dispute is the interpretation of the term "net income." Appellant contends that net income is gross income after taxes, whereas the appellee argues that net income is adjusted gross income as used on the tax form 1040. However, none of the tax forms filed by appellee contains the term "net income." In interpreting any agreement, the intention of the parties must be given effect and the terms used must be given their ordinary and common meanings.

Adjusted gross income is a specific term used in federal tax law and encompasses more than gross income, minus taxes. As its name implies, adjustments are permitted to gross income, in many instances to implement policy of the United States Congress. Many of these adjustments are irrelevant to determining available income and should not be involved in the determination of child support unless the parties specifically elect this standard. The parties here chose the term "net income," without defining or expressly agreeing to the meaning of the term. The tax return was likely referred to merely because information as to gross income, business expenses, and taxes can be conveniently ascertained from this form.

The better-reasoned cases support the position that net income means gross income less expenses and taxes. See, e.g., Cocco v. Cocco (1974), 166 Conn. 37, 41-42, 347 A.2d 72, 74, where the court held that net earnings meant gross income minus allowable expenses. Also, the court, in Marcus v. Marcus (1978), 175 Conn. 138, 142-143, 394 A.2d 727, 729, allowed business expenses to be deducted. These cases support the view that net income equals gross income minus expenses in realizing the income from which taxes are also subtracted, to arrive at available income. See, generally, Annotation, Construction and Effect of Provision in Separation Agreement that Wife is to have Portion of "Income," "Total Income," "Net Income," and the Like (1961), 79 A.L.R. 2d 609, at 620-627.

For the foregoing reasons, we hold that "net income" as used in this agreement means gross income less the expenses in realizing the income minus taxes. The first assignment of error is sustained.

The second assignment of error concerns a $25,000 stock loss which was deducted from appellee's gross income on the form 1040 for the tax year 1982. A loss of stock of this type is a capital loss which may be subtracted from ordinary income as a policy matter to encourage investments. However, it is not an expense incurred in producing income, and thus, it was not properly subtracted to arrive at net income as we have previously defined that term. The second assignment of error is sustained.

Since it was error to deduct the stock loss, whether the deduction was appropriately taken in 1982 rather than in another year, need not be addressed. The third assignment of error is sustained.

The fourth assignment of error relates to the arrearages owed by appellee. The court below found no arrearages were due based on the incorrect interpretation that net income was equal to adjusted gross income. Since the stock loss was not an expense incurred in realizing income, the $25,000 loss was incorrectly deducted and "net income" was erroneously found to be less than proper. Under the correct interpretation, arrearages will likely be due. The fourth assignment of error is sustained, and the case is remanded to compute net income and the resulting in-

crease in child support and arrearages in accordance with this opinion.

The final assignment of error with regard to the failure to award attorney fees is not well-taken. The provision in the separation agreement dealing with attorney fees states that they will be awarded if one party fails to disclose pertinent financial information. Such is not the case here. The problem was not an intentional failure to disclose but a disputed interpretation of net income. Therefore, the fifth assignment of error is overruled.

The first, second, third and fourth assignments of error are sustained. The fifth assignment of error is overruled. The judgment of the trial court is reversed and the case is remanded to the trial court for further procedure consistent with this opinion.

*Judgment reversed and cause remanded.*

STRAUSBAUGH and WHITESIDE, JJ., concur.